# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SERGII GRYBNIAK,

        Plaintiff,

    v.

X.AI LLC and X CORP.,

        Defendants.

Civil No. 3:26-cv-01365-ADC

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

**INTRODUCTION**

Plaintiff Sergii Grybniak asks this Court to hold two out-of-state technology companies, X.AI LLC and X Corp. (together, the "X Entities"), liable for a single sentence that a large language model ("LLM") service allegedly generated in response to an anonymous user's prompt. The suit fails at the threshold, for three independent reasons.

First, the Court lacks personal jurisdiction over the X Entities. Neither X.AI LLC nor X Corp. is "at home" in Puerto Rico—both are organized under Nevada law and headquartered elsewhere—so there is no general jurisdiction. Nor is there specific jurisdiction, because the Complaint identifies no conduct by the X Entities directed at this forum. Grok is an internationally available service, and the only alleged ties to Puerto Rico are Plaintiff's own residence and an unidentified user's unilateral decision to submit a prompt, which is insufficient under the law of this Circuit. Moreover, Plaintiff is conspicuously silent whether Plaintiff himself is the unidentified user, or if he orchestrated submission of the prompt. And of course, Plaintiff cannot manufacture personal jurisdiction through his own acts.

Second, even if jurisdiction existed, Plaintiff agreed—when he signed up for and used both Grok and X—to litigate any dispute related to those services exclusively in the federal or state courts of Texas. The mandatory forum-selection clauses Plaintiff agreed to are valid and binding, encompass every claim Plaintiff pleads, and warrant dismissal—or, at a minimum, transfer to the Northern District of Texas.

Third, the Complaint fails to state a valid claim for relief. Plaintiff repackages a single alleged defamation as three counts, but each requires the same elements, and the Complaint pleads none of them. The challenged statement—that Plaintiff "committed securities fraud and related violations"—is substantially true, because Plaintiff concedes he was adjudged to have violated the

antifraud provisions of the federal securities laws in connection with his securities offering. And Plaintiff alleges no actual damages, no fault, and no publication actually received by any third party, so his defamation claims necessarily fail.

For any one of these independent reasons, this case should be dismissed, and, if not dismissed, transferred to the Northern District of Texas.

## BACKGROUND

### A.      Plaintiff's Allegations

Plaintiff filed suit against the X Entities on June 10, 2026 regarding content that X.AI's Grok service allegedly generated in response to user prompts, and that was allegedly "distributed and published through Defendant X Corp.'s X platform (x.com)." Compl., ECF No. 1, ¶ 1. Plaintiff alleges that, on May 28, 2026, an unidentified user entered the following prompt into Grok: "Did Sergii Grybniak commit fraud?" *Id*. ¶ 18. According to Plaintiff, Grok responded, "Yes, according to the U.S. Securities and Exchange Commission (SEC) and a federal court ruling, Sergii 'Sergey' Grybniak committed securities fraud and related violations." Compl. ¶ 18 & Ex. A. The full response, which Plaintiff attaches to his Complaint, provides caveats including that "[s]ecurities fraud here refers to misleading investors in connection with the sale of securities," that "[t]his is a civil enforcement action by the SEC, not a criminal conviction," and that "[n]o evidence of criminal charges appears in public records." Compl., Ex. A.

Plaintiff concedes that a judgment was entered against him for violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933, *id.* ¶ 16, and that judgment is a matter of public record, *see SEC v. Grybniak*, No. 1:20-cv-00327, ECF No. 84 (E.D.N.Y. Feb. 4, 2025). Both of those statutory subsections fall under the title of "Fraudulent interstate transactions," and Section 17(a)(3) specifically punishes activity "which operate[s] as a fraud or deceit" on the purchaser of

2

securities. 15 U.S.C. § 77q(a). Yet, Plaintiff still asserts that such response is defamatory because he consented to judgment on only negligence-based theories of liability. *Id.* ¶¶ 14–17.

Plaintiff further contends that Grok generated the allegedly false content "in response to an ordinary prompt capable of being submitted by any member of the public, thereby publishing the statement to persons other than Plaintiff." *Id.* ¶ 19. Plaintiff also states that he "has preserved evidence that Defendants generated and published the same or substantially similar defamatory outputs to third parties[.]" *Id.* The Complaint is silent, however, as to how those third parties allegedly came to see the outputs, and whether Plaintiff himself prompted Grok in those instances, or encouraged others to do so.

Based on those allegations, Plaintiff asserts three claims, styled as: (1) "Libel/Defamation Per Se"; (2) "Defamation by Implication and Material Omission"; and (3) "Defamation (Negligence)." *Id*. ¶¶ 27–33. Plaintiff seeks injunctive relief and compensatory damages. *Id*. at 6, Prayer for Relief ¶¶ (a)–(c).

**B.     Grok and X.AI's Terms of Service**

X.AI operates the artificial intelligence service Grok. Plaintiff created a Grok account on May 22, 2025. Declaration of Barry Murphy ("Murphy Decl.") ¶ 8 (attached as Exhibit 1). In creating and using his Grok account, Plaintiff necessarily agreed to X.AI's Relevant Terms of Service ("TOS").[1] *See id.* ¶ 5; *see also id.*, Ex. A at 1 ("By using our Service, you acknowledge and agree to these Terms"); *see also id.* ("reserv[ing] the right to modify these Terms"); *id.*, Ex. A

---

[1] The Court may consider X.AI's and X Corp.'s Relevant Terms, attached as Exhibit A to Declaration of Barry Murphy and as Exhibit A to the Declaration of Megan Scolari, respectively, as part of a Rule 12(b)(6) motion without converting its analysis into one for summary judgment because they are integral to Plaintiff's claims against the X Entities as use of the Grok service and the X platform necessarily implicates the X.AI's and X Corp.'s TOS governing those services. *See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Moreover, "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id*. at 33–34 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).

at 2 ("Subject to your compliance with these Terms, you may access and use our Service."). When Plaintiff signed up for his Grok account, X.AI's TOS were hyperlinked in contrasting bold text on the sign-up page, along with the statement that, "By continuing, you agree to X.AI's Terms of Service and Privacy Policy." Murphy Decl. ¶ 9. The same message, including the same bold-offset hyperlink to X.AI's TOS, appears each time a user accesses Grok through the login page. *Id.* ¶ 11.

X.AI's Relevant TOS contain the following choice of law and mandatory forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Service, or any patents—including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Service or the complete or partial termination thereof—shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Wichita County or Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum. For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise . . . .

*Id.*, Ex. A at 9.

### C.      The X Platform and the X Terms of Service

X Corp. operates X, an online platform where users like Plaintiff can make and share posts. Plaintiff created his X (then Twitter) account under the handle @grybniak on February 22, 2015. *See* Declaration of Megan Scolari ("Scolari Decl.") ¶ 10 (attached as Exhibit 2). In creating and using his X account, Plaintiff agreed to X Corp.'s Relevant TOS. Scolari Decl., Ex. A at 2–3 ("These Terms of Service ('Terms') govern your and other users' access to and use of the services . . . . By using the Services you agree to be bound by these Terms."); *id.* at 10 ("We may revise these Terms from time to time . . . . [T]he most current version of the Terms . . . will govern our

4

relationship with you. . . . By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."). When Plaintiff signed up for his X account, X Corp.'s TOS were hyperlinked on the Twitter sign-up page in contrasting blue text near the "Sign up" button, with a reminder that "[b]y signing up, you agree to the Terms of Service and Privacy Policy[.]" Scolari Decl. ¶ 12.

Furthermore, at all relevant times, the X TOS have provided that X Corp. may change its TOS, and that the user's continued access or use of the X platform constitutes acceptance of the revised version of the Terms. *Id.* ¶ 14. Moreover, it has been X Corp.'s longstanding business practice that, each time that X Corp. has made material revisions to its TOS, X Corp. gives notices to X users by a notification prompt that appears when the user logs into their account. *Id.* ¶ 15. Recent notification prompts have read:

**Updates to our Terms of Service and Privacy Policy**
We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center.

Scolari Decl. ¶ 17 & Ex. D. The words "Terms of Service" in this notification prompt appeared as a blue hyperlink that led to the updated TOS. Scolari Decl. ¶ 17. And at the bottom of the prompt, the X user who received it was asked to click a button labeled "Got it." *Id.* ¶ 19 & Ex. D. X Corp.'s business records reflect that, on December 16, 2025, Plaintiff acknowledged receipt of this notification prompt advising him that X Corp. had updated its TOS to version 21, which was the last version to include material changes to the TOS. *Id.* ¶ 20.

Like X.AI's Relevant TOS, X Corp.'s Relevant TOS (version 22) contains a choice of law and mandatory forum selection clause—which is substantively identical to the clause included in

version 21 of X Corp.'s TOS—requiring all disputes to be brought exclusively in federal or state courts in Texas. *Id.*, Ex. A at 9.[2]

## ARGUMENT

### I.      Plaintiff's Complaint Should Be Dismissed Because the Court Lacks Jurisdiction.

Personal jurisdiction is an "essential element" that must be satisfied before proceeding to the merits of a plaintiff's claims. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). Without personal jurisdiction, a court "is powerless to proceed to an adjudication." *Id.* (quoting *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). The burden of establishing that jurisdiction may be exercised rests with the plaintiff. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). To carry that burden, the plaintiff may not rest on unsupported allegations but must "put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp.*, 812 F.3d at 58 (quotation omitted). Even the facts Plaintiff does allege fail to establish jurisdiction here, as discussed below.

####       1.      There is no General Jurisdiction over the X Entities.

General jurisdiction "extends to any and all claims brought against a defendant[,]" but may be exercised "only when a defendant is essentially at home in the State." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (internal quotation marks omitted). For business entities, including corporations and limited liability companies, "at home" means the place of incorporation or organization, or the principal place of business, except in the rare

---

[2] Whereas the forum selection clause in version 21 states that claims "shall be brought and must proceed exclusively in the federal or state courts located in Tarrant County, Texas[,]" the Relevant TOS state that claims "shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas." Wichita County and Tarrant County, Texas are both located within the territory covered by the U.S. District Court for the Northern District of Texas.

"exceptional case" where operations in another forum are so substantial as to render the corporation at home there. *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014).

Plaintiff does not appear to contend that the Court has general jurisdiction over the X Entities. *See* Compl. ¶ 12. Nor could he. X.AI LLC is organized under the laws of Nevada with its principal place of business in Texas. Compl. ¶ 8. X Corp. is also organized under the laws of Nevada, as Plaintiff acknowledges, and Plaintiff does not allege that X Corp.'s principal place of business is Puerto Rico. Compl. ¶ 9. Thus, neither is "at home" in this forum. *Daimler*, 571 U.S. at 137. Courts applying *Daimler* have repeatedly rejected efforts to assert general jurisdiction over similarly situated companies—including Twitter (predecessor in interest to X Corp.)—based on business activity in the forum state. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017); *Al-Ahmed v. Twitter*, 553 F. Supp. 3d 118, 125–26 (S.D.N.Y. 2021). The Court should reach the same conclusion here.

2. The X Entities Are Not Subject to Specific Jurisdiction in Puerto Rico.

The X Entities are also not subject to specific jurisdiction in this case. "Specific jurisdiction allows a court to hear a particular case as long as that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016) (internal quotation marks omitted). Specific jurisdiction exists only where there is "an affiliation between the forum and the underlying controversy"—that is, where the defendant's forum conduct gives rise to the plaintiff's claims. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

To establish specific jurisdiction, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). The First Circuit has held that the

reach of Puerto Rico's long-arm statute stretches up to the point allowed by the Constitution. *Negrón-Torres v. Verizon Commc'ns., Inc.*, 478 F.3d 19, 24 (1st Cir. 2007). Accordingly, the statutory and constitutional inquiries merge, and the Court may proceed directly to the due process analysis. *See id.*

Under that merged analysis, the Court must determine "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state[ ]; and (3) whether the exercise of jurisdiction is reasonable." *Baskin-Robbins*, 825 F.3d at 35 (internal quotation marks and alterations omitted). "All three of these elements must be present for specific jurisdiction to attach." *Id*. For the reasons explained below, Plaintiff cannot establish any of the three elements required for specific jurisdiction:

***Relatedness***: The relatedness requirement is satisfied when the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford*, 592 U.S. at 359. "There must be an affiliation between [the forum and] the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 359–60. That standard "incorporates real limits." *Id.* at 362. While the phrase "relate to" does not demand a strict causal link, it still "adequately protect[s] defendants foreign to a forum" and does not extend to every connection a plaintiff can name. *Id*. At a minimum, the plaintiff must identify a "demonstrable nexus" between his claims and the defendant's forum-based activities. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

The relatedness inquiry, moreover, looks to the X Entities' own contacts with Puerto Rico—not to Plaintiff's connections with the forum. Jurisdiction must "arise out of contacts that the '[defendant] [itself]' creates with the forum State," and the minimum-contacts analysis "looks

8

to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). Thus "the plaintiff cannot be the only link between the defendant and the forum"; rather, it is "the defendant's conduct that must form the necessary connection with the forum State." *Id.* at 285. Jurisdiction cannot rest on where Plaintiff happened to feel the alleged reputational harm, because he would have felt that same injury "wherever else [he] might have traveled." *Id.* at 290–91; *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (1st Cir. 1998) (in-forum "effects of extra-forum activities" do not suffice).

Measured against these principles, the Complaint identifies no contact by the X Entities with Puerto Rico out of which Plaintiff's claim arises. The only connections to the forum it pleads are Plaintiff's own residence there and the decision by an unidentified "user," who Plaintiff does not allege was located in Puerto Rico, to submit a prompt to an internationally available service on or about May 28, 2026. Compl. ¶¶ 18–19 & Ex. A. Neither is conduct by the X Entities directed at Puerto Rico. *See Walden*, 571 U.S. at 285.

Plaintiff's assertion that he "has preserved evidence that Defendants generated and published substantially similar defamatory outputs to third parties, including users in Puerto Rico and elsewhere," and that he will identify third-party witnesses and produce their declarations in discovery, subject to a protective order (Compl. ¶ 19), is not sufficient to show relatedness. Plaintiff bears the burden of establishing personal jurisdiction now, at the motion to dismiss stage. *A Corp.*, 812 F.3d at 58. In any event, the promised evidence, if it exists, would be unlikely to advance his argument. Jurisdiction must arise from "contacts that the defendant *[itself]* creates with the forum State," not the plaintiff's own conduct. *See Walden*, 571 U.S. at 284 (quotation omitted). To the extent Plaintiff has orchestrated third parties' viewing of Grok outputs about

9

himself, that is Plaintiff's conduct, not conduct of the X Entities, and the Complaint conspicuously fails to say otherwise.

What is left is the same gap the First Circuit found fatal in *Lin v. TipRanks, Ltd.*, 19 F.4th 28 (1st Cir. 2021), where the plaintiff "failed to make the requisite showing that anyone in the forum state saw" the challenged statements, and the content's nationwide accessibility did not satisfy relatedness, *id.* at 30, 38–40; *see also Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 22 (1st Cir. 2018) (forum-accessible website insufficient, absent evidence that someone in the forum viewed the defamatory material). The Complaint thus pleads no forum-directed conduct by the X Entities, and no demonstrable nexus between Plaintiff's claim and any such conduct. Relatedness is not satisfied.

***Purposeful Availment***: Under the second requirement, the defendant's forum contacts must be purposeful—"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010) (quotation omitted). The inquiry "focus[es] on the defendant's intentionality," *A Corp.*, 812 F.3d at 60, and turns on two cornerstones: voluntariness and foreseeability, *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 59 (1st Cir. 2020). Voluntariness demands that the defendant's forum contacts "result proximately from its own actions," not from the unilateral activity of the plaintiff or a third party; foreseeability demands that the defendant's connection with the forum be such that it "should reasonably anticipate being haled into court there." *Id.* (quotations omitted). "In website cases," the First Circuit has recognized, the "'purposeful availment' element often proves dispositive." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 124 (1st Cir. 2022).

10

Under First Circuit law, the mere operation of a website accessible in the forum—even one a forum resident in fact uses—does not establish purposeful availment. A defendant's website must do "something more" than be accessible in the forum. *Cossaboon*, 600 F.3d at 35. Thus, "a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible," *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018), and merely making a site accessible in the forum is not the "voluntary service" of the forum market that purposeful availment requires, *id.* at 10. Otherwise, "the universality of websites in the modern world would overwhelm constitutional limitations and render website operators amenable to suit anywhere within the vast reach of the internet." *Motus*, 23 F.4th at 125 (quoting *Chen*, 956 F.3d at 60).

Applying those principles in *Chen*, the court held that it lacked jurisdiction over an out-of-state operator of "an interactive online learning platform accessible in (and allegedly accessed by [the plaintiff] from)" the forum, because the plaintiff failed to show that the defendant "deliberately used its online learning platform . . . to target him" there. 956 F.3d at 60–61. The "broad and generic" foreseeability that residents of any State might access the platform was "insufficient, standing alone, to rise to the level of purposeful availment." *Id*. The First Circuit reaffirmed that rule in *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90 (1st Cir. 2024), where the plaintiff alleged that the defendant's website deployed tracking code onto his browser while he used the site in the forum. Purposeful availment was still absent because the plaintiff offered no "affirmative proof" that the defendant "purposefully deployed [the code] to intentionally target users in Massachusetts," and, although the defendant reached the plaintiff when he "happened to be in Massachusetts," nothing showed it "knew that it was targeting him" there. *Id.* at 96–98; *see also*

11

*Motus*, 23 F.4th at 126 (foreseeability in website cases requires that the defendant know "of both the existence of a potential victim and the victim's likely whereabouts").

The same defects are fatal here, and, if anything, Plaintiff's assertion of jurisdiction is weaker than in those cases. Grok is a generally available, international AI service that generates outputs in response to prompts submitted by any member of the public, from any location. Compl. ¶¶ 18–19. The Complaint does not allege that any output concerning Plaintiff was aimed at Puerto Rico any more than at any other jurisdiction, or that the X Entities "actually and purposefully conducted" transactions with Puerto Rico residents through the platform. *Cossaboon*, 600 F.3d at 35. The only alleged tie to the forum is a single, unattributed "user" prompt—without any indication that the alleged user was located in Puerto Rico—and the bare assertion that similar outputs reached "users in Puerto Rico and elsewhere"—without the necessary detail to understand how those third parties allegedly came to receive it, or whether Plaintiff was involved. Compl. ¶ 19. Even putting aside the possibility that Plaintiff himself orchestrated the output (the Complaint does not say), a user's unilateral decision to access an internationally available service from the forum is exactly the kind of third-party activity that cannot supply purposeful availment. *See Chen*, 956 F.3d at 59–61; *Rosenthal*, 101 F.4th at 97–98. Nor could the X Entities have foreseen suit in Puerto Rico. Indeed, the Complaint does not allege that they knew Plaintiff was located in Puerto Rico, much less that they targeted him there. *See Motus*, 23 F.4th at 126; *Rosenthal*, 101 F.4th at 97–98. Because the Complaint pleads no "something more" than nationwide accessibility, it fails to establish purposeful availment. *Cossaboon*, 600 F.3d at 35.

***Reasonableness***: Reasonableness is analyzed through what have been deemed the "gestalt factors." These five factors include "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective

relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Morales v. BAH Logistics LLC*, 825 F. Supp. 3d 60, 70–71 (D.P.R. 2026) (quoting *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994)). "[A]ppraisal of these factors operates on a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Baskin-Robbins*, 825 F.3d at 38 (internal quotation marks omitted).

Because Plaintiff's showing on relatedness and purposeful availment is exceedingly weak, the unreasonableness of allowing Plaintiff's case to proceed in this forum is apparent. Both X.AI LLC and X Corp. are organized under Nevada law and headquartered outside Puerto Rico. Compl. ¶¶ 8–9. Plaintiff does not allege that either entity maintains employees, offices, or operations in this forum (they do not); and the underlying claim has no substantive connection to Puerto Rico beyond Plaintiff's domicile. Moreover, as discussed above, Plaintiff has agreed to litigate any claims against the X Entities in federal and state courts in Texas, meaning Plaintiff has no legitimate interest in obtaining relief in this forum. *See* Background, Parts B–C, *supra*. It is not reasonable to hale the X Entities into court in Puerto Rico in these circumstances.

## II. Plaintiff's Complaint Should Be Dismissed or Transferred Based on the Forum Selection Clause in the Relevant Terms

### A. The Complaint Should Be Dismissed Because It Was Brought in the Wrong Court.

In the First Circuit, courts treat "a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014); *Firemen's Ins. Co. v. ACE Am. Ins. Co.*, 390 F. Supp. 3d 267, 274 (D. Mass. 2019) ("In this Circuit, a valid forum-selection clause can . . . be enforced through a Rule 12(b)(6) motion."). Forum

13

selection clauses are "prima facie valid" and, absent a "strong showing" by the resisting party that the clause is "unreasonable under the circumstances," it should be enforced. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). To determine whether dismissal due to a forum selection clause is appropriate, the Court must determine three things: (1) whether the clause is mandatory; (2) whether all the claims in the complaint are subject to the forum selection clause; and (3) whether the presumption of enforceability should apply to the forum selection clause. *Claudio-De León*, 775 F.3d at 48 (citing *Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir. 2010)). Each of these requirements is satisfied, making dismissal appropriate.

### 1.      The Forum Selection Clauses Are Mandatory.

The First Circuit has held that "[u]nder federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009). "Permissive forum selection clauses . . . authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Id.* (second alteration in original) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (3d ed.1998)) (internal quotation marks omitted); *see also Claudio-De León*, 775 F.3d at 46.

Both of the X Entities' forum selection clauses are mandatory, not permissive. They both include language that Plaintiff's claims "*shall* be brought and *must* proceed *exclusively*" in the U.S. District Court of the Northern District of Texas or state courts located in Wichita County or Tarrant County, Texas. *See* Murphy Decl., Ex. A at 9 (emphasis added); Scolari Decl., Ex. A at 9 (emphasis added). The use of the words "shall," "must," and "exclusively" leaves no doubt as to

14

the mandatory nature of the clause. *See Claudio-De León*, 775 F.3d at 46 (forum-selection clause was "no doubt" mandatory because "it is axiomatic that the word 'shall' has a mandatory connotation").

2.    <u>The Forum Selection Clauses Encompass the Claims and Parties at Issue.</u>

After determining that a forum selection clause is mandatory, the "next step in evaluating the applicability of a forum selection clause is ascertaining its scope." *Rafael Rodríguez Barril, Inc.*, 619 F.3d at 92–93. This is a "clause-specific analysis," meaning that "'it is the language of the forum selection clause itself that determines which claims fall within its scope.'" *Autoridad de Energía Eléctrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 145 (1st Cir. 2017) (quoting *Claudio-De León*, 775 F.3d at 46).

The Relevant Terms' forum-selection clauses apply to all claims "related to" the "Terms" and "Services," "including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services[.]" Murphy Decl., Ex. A at 9; Scolari Decl., Ex. A at 9. The First Circuit has "endorsed a broad reading of the term 'related to' in forum selection clauses." *Haddock-Acevedo v. Bd. of Governors of Univ. of Puerto Rico*, 615 F. Supp. 3d 78, 83 (D.P.R. 2022). A causal connection is not required, but rather only that the plaintiff's claim be "connected by reason of an established or discoverable relation." *Id.* (quoting *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011)).

All of Plaintiff's claims clearly "relate to . . . Content" allegedly generated by Grok, in response to alleged unnamed user prompts, and allegedly published through X. *See* Compl. ¶¶ 1, 19–20, 27–33. Plaintiff appears to argue otherwise in his Complaint—asserting that his claims arise "from Defendants' publication of false statements to third parties and from independent tort duties not to defame, not from Plaintiff's contractual use of any Grok or X service." Compl. ¶ 13.

15

But the First Circuit has rejected Plaintiff's position, explaining that a party should not be permitted to avoid a contractual forum selection clause through "artful pleading of tort claims." *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993); *see also Doe v. Seacamp Ass'n, Inc.*, 276 F. Supp. 2d 222, 228 (D. Mass. 2003) ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleadings of tort claims." (alteration and quotation omitted)). Moreover, the forum selection clauses to which Plaintiff agreed specifically state that they apply "regardless of whether a dispute or any claims . . . are based in contract, tort, statute, common law, or otherwise[.]" Murphy Decl., Ex. A at 9; Scolari Decl., Ex. A at 9. Again, it is the language of the contract that controls, and in this case, Plaintiff has agreed to litigate *any* claim "related to" any "Content" generated by Grok, or published on X, in courts in Texas.

### 3.    There is no Reason the Presumption of Enforceability Should Not Apply.

Once it has been established that the "forum selection clause is mandatory and its scope covers [the plaintiff's] claims, the final step in evaluating the clause involves asking 'whether there is some reason the presumption of enforceability should not apply.'" *Claudio-De León*, 775 F.3d at 48 (quoting *Rafael Rodríguez Barril*, 619 F.3d at 93). "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is '"unreasonable" under the circumstances,' it should not be set aside." *Id.* (quoting *Bremen*, 407 U.S. at 15).

There are four permissible grounds for finding such a clause unreasonable, and thus unenforceable: (1) the clause was the product of "fraud or overreaching"; (2) "enforcement would be unreasonable and unjust"; (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or (4) "enforcement would contravene a strong public policy of the forum in

16

which suit is brought, whether declared by statute or by judicial decision." *Rafael Rodríguez Barril*, 619 F.3d at 93 (alteration in original) (quoting *Bremen*, 407 U.S. at 15, 18) (internal citations omitted). None of those four grounds applies in this case.

*First*, Plaintiff's agreement to the Terms' Forum Selection Clauses was not due to fraud or overreaching. Plaintiff voluntarily agreed to the forum selection clauses when he created his Grok and X accounts and continued to use those services. The Relevant Terms' forum selection clauses were also reasonably communicated to Plaintiff. As discussed above, Plaintiff was informed on the sign-up page for Grok that, by signing up for service, he agreed to X.AI's TOS, which were hyperlinked in contrasting bold font. *See* Murphy Decl. ¶ 9. Plaintiff also agreed to the Relevant TOS whenever he signed into his account. *Id.* ¶ 11. Similarly, Plaintiff agreed to be bound by X Corp.'s TOS, including future updates, when creating his X (then Twitter) account, and he has since further confirmed his agreement both by clicking on the "Got it" acceptance as to version 21, and through his continued use of the platform after X's Relevant TOS went into effect. *See* Scolari Decl. ¶¶ 12–21.

*Second*, enforcement of the forum selection clauses would not be unreasonable or unjust. Courts routinely enforce forum selection clauses, like those in the Relevant Terms, and Plaintiff cannot point to any reason why doing so here would lead to an unfair or unjust result. *See Claudio-De León*, 775 F.3d at 48–49 (forum selection clause enforceable despite defendant's eleven-month delay before seeking to invoke the clause); *see also Taddeo-Waite v. X Corp.*, No. 25-CV-00874, 2025 WL 3237422, at *1 (D. Conn. Nov. 20, 2025) (enforcing X Corp.'s forum selection clause); *Doe v. X Corp.*, No. 25-CV-07597, 2025 WL 3500543, at *8 (N.D. Cal. Nov. 6, 2025) (same).

*Third*, there is no reason that the Northern District of Texas is an inconvenient forum—and certainly not to such a degree that proceedings there "will be so gravely difficult and inconvenient

17

that [Plaintiff] will for all practical purposes be deprived of his day in court." *Rafael Rodríguez Barril*, 619 F.3d at 93. The First Circuit has required a "heavy burden of proof" to set aside a forum selection clause on grounds of inconvenience. *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005). "Were it otherwise, forum selection clauses would almost never be enforceable, for inconvenience to at least one of the parties is an almost forgone conclusion when dealing with a provision that requires litigating away from one's home turf." *In re Mercurio*, 402 F.3d at 66. Here, there is no reason Plaintiff cannot pursue his claims in the agreed-upon forum. *Cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 246–55 (1981) (holding that potential change in law cannot, by itself, fend off dismissal under forum non conveniens absent showing that new law is "clearly inadequate or unsatisfactory").

*Fourth*, there is no strong public policy that would be contravened by enforcing the forum selection clauses in the Relevant Terms. There is no public policy in Puerto Rico, "declared by statute or by judicial decision" against enforcing the Relevant Terms' forum selection clauses. *Rafael Rodríguez Barril*, 619 F.3d at 93. To the contrary, enforcing the parties' agreement would advance settled policy, recognized by the Supreme Court, that forum selection clauses "should be given full effect." *See Bremen*, 407 U.S. at 12–13.

In sum, the Relevant Terms' forum selection clauses are mandatory, encompass all of Plaintiff's claims, and are presumptively enforceable and not subject to any exception rendering them unreasonable. Accordingly, this action should be dismissed. Should the Court decline to dismiss, it should transfer this case to the Northern District of Texas, as discussed below.

## B. Alternatively, the Case Should Be Transferred to the Northern District of Texas.

Should the Court decline to dismiss based on the forum selection clause, Plaintiff's claims should be transferred to the Northern District of Texas under 28 U.S.C. § 1404(a). "For the

18

convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

When, as here, "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). "In contesting the validity of a forum selection clause, the resisting party bears a 'heavy burden of proof.'" *Triangle Cayman Asset Co. 2 v. Property Rental & Invest. Corp.*, 278 F. Supp. 3d 508, 514 (D.P.R. 2017) (quoting *Bremen*, 407 U.S. at 17). Only under "extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co.*, 571 U.S. at 62. Specifically, in the face of a valid forum selection clause, "the plaintiff's choice of venue merits no weight" and the court "should not consider arguments about the parties' private interests." *Id.* at 63–64. That leaves only the public interest factors, and Plaintiff bears the burden of demonstrating that "public interest factors overwhelmingly disfavor a transfer." *Id.* at 67.

The public interest here weighs in favor of granting the X Entities' motion to transfer. It is "not unknown that 'the District of Puerto Rico has one of the most congested criminal and civil dockets in the nation,'" which "weighs heavily in favor of transfer." *Caribbean Rests., LLC v. Burger King Corp.*, 23 F. Supp. 3d 70, 79 (D.P.R. 2014) (quoting *Miranda-López v. Figueroa-Sancha*, 943 F. Supp. 2d 276, 279 (D.P.R. 2013)). As courts in this District have frequently recognized, "[i]n this extremely congested district, both on the civil and criminal dockets, it is thus extremely important for the court to effectively manage its caseload." *Márquez v. Drugs Unlimited, Inc.*, 737 F. Supp. 2d 66, 68 (D.P.R. 2010); *see also Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 107 (1st Cir. 2020) (public interest factors include consideration of court congestion).

19

Enforcing the parties' agreed-on forum would promote the public interest by relieving the Court of the burden of addressing a case that should have been filed elsewhere in the first instance.

## III.    Plaintiff Fails to State a Cause of Action.

Even if the Court were to conclude that it has personal jurisdiction over the X Entities and that the Relevant Terms' forum selection clauses do not require dismissal or transfer, Plaintiff's Complaint should still be dismissed because the claims fail as a matter of law. To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts as true but disregards "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (cleaned up). A *pro se* plaintiff's pleadings should be construed liberally, but *pro se* status "does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

Plaintiff pleads this single defamation claim as three counts under Puerto Rico law—libel per se (Count I), defamation by implication (Count II), and negligence in the alternative (Count III)—but each rests on the same May 28 output and requires the same three elements.

"The defamation cause of action is according to the Puerto Rico Supreme Court an action that as a general rule must now be resolved under the normativeness of a traditional damages action for intentional torts or negligence." *González Pérez v. Gómez Águila*, 312 F. Supp. 2d 161, 173 (D.P.R. 2004) (citing *Ojeda v. El Vocero de Puerto Rico*, 137 D.P.R. 315, 328 (1994)). For any defamation claim under Puerto Rico law, the plaintiff must adequately allege: "(1) that the information is false; (2) that he or she suffered real damages; and (3) that in the case of a private figure, the publication was negligently made." *Id*. (citing *Ayala-Gerena v. Bristol Myers-Squibb*

*Co.*, 95 F.3d 86, 98 (1st Cir. 1996)); *see also Rivera Rodríguez v. First Bank Puerto Rico*, 184 F. Supp. 2d 162, 166 (D.P.R. 2002). A public figure must prove actual malice by clear and convincing evidence. *Torres Silva v. El Mundo, Inc.*, 6 P.R. Offic. Trans. 581, 593–94 (P.R. 1977); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). And in every case the statement must have been published to a third party. *Porto y Siurano v. Bentley P.R., Inc.*, 132 P.R. Offic. Trans. 331, 346–47 (P.R. 1992).[3]

Even if the output of a large language model, like Grok, could ever be false for purposes of a defamation claim and could constitute an actionable publication, the claim necessarily fails because the Complaint fails to adequately allege any of the required elements for defamation.

### A.      The Complaint Does Not Adequately Allege Falsity.

The first element Plaintiff must satisfy under Puerto Rico's unified defamation framework is "that the information is false." *González Pérez*, 312 F. Supp. 2d at 173. Falsity means *material* falsity. A statement is not actionable if it is substantially true, because "minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting" of the statement is justified. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991); *see also Villanueva v. Hernández Class*, 128 P.R. Offic. Trans. 618, 646–47 (P.R. 1991). The question is whether the statement "would have a different effect on the mind of the [reader] from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517; *see also Villanueva*, 128 P.R. Offic. Trans. at 646–47.

---

[3] The Court need not resolve any choice-of-law question to dismiss, because the absence of any well-pleaded third-party publication, of any facts establishing fault, and of any real damages are dispositive under Texas law no less than Puerto Rico law. Texas defamation law requires the same essential showings: publication of a false statement of fact to a third party, the requisite degree of fault, and damages unless the statement is actionable per se. *See, e.g.*, *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). The pleading failures discussed herein are therefore fatal regardless of which jurisdiction's law governs. If this case is transferred to the Northern District of Texas, the X Entities respectfully ask for the opportunity to supplement briefing on their motion to dismiss with a discussion of Texas law.

Here, Plaintiff identifies no false statement. The SEC matter and its resolution are matters of public record, and Plaintiff concedes their substance. He admits that the final judgment against him included violations of Sections 17(a)(2) and 17(a)(3). Compl. ¶¶ 14, 16. Those are antifraud provisions. Section 17 is captioned "Fraudulent interstate transactions," and Section 17(a) governs the "[u]se of interstate commerce for purpose of fraud or deceit." 15 U.S.C. § 77q(a). Section 17(a)(3), one of the very provisions Plaintiff admits the judgment rested on, reaches conduct "which operates or would operate as a fraud or deceit upon the purchaser." *Id.* § 77q(a)(3). That violations of Section 17(a)(2) and Section 17(a)(3) do not require scienter does not make them any less antifraud provisions of the securities laws. *Aaron v. SEC*, 446 U.S. 680, 696–97 (1980).

On Plaintiff's own concessions, then, Grok's alleged statement that he "committed securities fraud and related violations," Compl. ¶ 18, is substantially true. Indeed, read in full, the output Plaintiff attached as Exhibit A to his Complaint conveys exactly what the public record and Plaintiff's pleading establish—that Plaintiff was adjudged to have violated the antifraud provisions of the securities laws in the offer or sale of securities. The alleged output also explains "[s]ecurities fraud here refers to misleading investors in connection with the sale of securities," states that "[t]his is a civil enforcement action by the SEC, not a criminal conviction," and confirms that "[n]o evidence of criminal charges appears in public records." Compl., Ex. A. That the provisions underlying the judgment require only negligence rather than an intent to defraud does not render the statement false; it is at most a difference in degree that would not change the statement's effect on the mind of an ordinary reader. *Masson*, 501 U.S. at 517. Plaintiff thus cannot establish falsity.

**B.    The Complaint Does Not Adequately Allege Damages.**

Plaintiff's claim also fails because he has not adequately alleged any real damages. Plaintiff attempts to avoid this deficiency by relying on a theory of defamation *per se*. Compl. ¶¶ 27–29.

22

The Supreme Court of Puerto Rico, however, has been explicit that the traditional distinction between defamation *per se* and defamation *per quod* is no longer recognized. *See Villanueva*, 128 P.R. Offic. Trans. at 641 n.13. Thus, Plaintiff's premise that, "because the statements are defamatory per se, damages are presumed," Compl. ¶ 29, is incorrect. Actual damages are required to prevail on any defamation claim. *See Rivera Rodríguez*, 184 F. Supp. 2d at 166.[4]

Plaintiff alleges no such damages. He makes vague reference to "reputational, professional, and economic harm . . . to be proven at trial," Compl. ¶¶ 25, 29, but such threadbare recitals are insufficient to survive Rule 12. *See A.G. by & through Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80–81 (1st Cir. 2013). And Plaintiff's only allegation approaching a concrete injury—the September 3, 2025 denial of his Act 60 tax-exemption application—cannot plausibly be attributed to the X Entities. By Plaintiff's own account, the agency invoked the SEC's original allegations and a purported "criminal history," not any Grok output. Compl. ¶ 24. That denial also predates both the earliest Grok output the Complaint identifies and Plaintiff's first purported notice to the X Entities in December 2025. *Id.* ¶¶ 18, 21. It therefore cannot supply the causal link between the challenged statement and any cognizable harm. Plaintiff has not adequately alleged damages.

### C.      The Complaint Fails to Adequately Allege Fault.

Whether Plaintiff is a public or private figure is a question of law for the Court. *Pendleton v. City of Haverhill*, 156 F.3d 57 (1st Cir. 1998). Yet, even assuming, without conceding, for purposes of this Motion that Plaintiff is a private figure, Plaintiff's allegations are insufficient.[5]

---

[4] Even if defamation *per se* were still a viable theory under Puerto Rico law, Plaintiff's premise that the alleged Grok output "imputes the commission of a crime" is incorrect. Compl. ¶ 29. The SEC prosecutes only civil violations and has no power to bring a criminal case. Plaintiff's own exhibit confirms the point on its face. The alleged output explains, "[t]his is a civil enforcement action by the SEC, not a criminal conviction," and that "[n]o evidence of criminal charges appears in public records." Compl., Ex. A. The challenged statement thus disclaims the very criminal imputation on which Plaintiff's *per se* theory depends.

[5] Although the Court need not resolve the issue, because Plaintiff has not alleged facts sufficient to adequately plead fault under either standard, Plaintiff's own pleading concedes that he may be a limited-purpose public figure. Compl. ¶ 26. And rightly so. To determine whether a plaintiff is a limited-purpose public figure, courts in the First Circuit ask

Puerto Rico measures negligent publication by a three-part test: the nature of the information and the foreseeability of harm; the reliability of the source; and the reasonableness of the process used to verify the information. *Torres Silva*, 6 P.R. Offic. Trans. at 596; *Villanueva*, 128 D.P.R. 618. Plaintiff fails to allege any of these three elements, stating only that the X Entities "breach[ed] their duty to exercise reasonable care to ascertain the truth." Compl. ¶ 33. That is precisely the type of elements-only conclusion that is insufficient to state a plausible claim. *See Ocasio-Hernández*, 640 F.3d at 12. Plaintiff provides no detail as to what a reasonable standard of care would be in the context of an LLM, like Grok, or any specific allegation of how the X Entities failed to act reasonably, relying instead on pure *ipse dixit*. Plaintiff's claim should be dismissed.

### D.    The Complaint Fails to Adequately Allege Publication to a Third Party.

Publication is an essential element of every defamation theory, and it is satisfied only when the statement is communicated to someone other than the person defamed. *García-García v. Costco Wholesale Corp.*, 878 F.3d 411, 427 (1st Cir. 2017) (citing *Porto y Siurano*, 132 D.P.R. at 347–48). Here, Plaintiff has not sufficiently alleged any publication to a third party. Plaintiff states that an unidentified "user" received the alleged output from Grok, but the Complaint fails to say whether Plaintiff *himself* was the user—or, if it was not Plaintiff, who the user is. Compl. ¶ 18. And while Plaintiff claims to have "preserved evidence" of "the same or substantially similar defamatory outputs" published "to third parties, including users in Puerto Rico and elsewhere,"

---

(1) whether a public controversy predated the alleged defamation, and (2) whether the plaintiff voluntarily sought to "influence the resolution" of that controversy. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13–14 (1st Cir. 2011). Both are satisfied on the face of the Complaint. Plaintiff's public securities offering—"the OPP Token ICO"—and the ensuing SEC enforcement action were a genuine public controversy that predated the alleged May 2026 Grok output, and by voluntarily undertaking a public securities offering "out of which publicity would foreseeably arise," *id.* at 20 n.8, Plaintiff injected himself into it. The challenged statement—that Plaintiff "committed securities fraud" in connection with that offering (Compl. ¶ 18)—is directly related to his participation in the public controversy.

24

his careful phrasing leaves open whether the alleged communication was part of Plaintiff's own use of Grok, or through a session he arranged. *Id.* ¶ 19.

Publication the Plaintiff himself invites or procures, whether received directly or through someone acting at his direction, is not actionable. *See Vargas v. Royal Bank of Canada*, 604 F. Supp. 1036, 1044 (D.P.R. 1985). Moreover, courts routinely dismiss defamation claims that, as in the Complaint here, fail to provide basic information to support the claim—the "essential 'who, what, when, and where'"—lest the defendant be denied fair notice of the claim it must defend against. *See Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192–93 (D. Mass. 2015); *see also Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 688 (M.D. Tenn. 2018) (concluding that allegations of communications to unknown third parties were too vague to state a claim).

Nor can Plaintiff save his claim through speculation. Plaintiff states that Grok generated the alleged output "in response to an ordinary prompt capable of being submitted by any member of the public, thereby publishing the statement to persons other than Plaintiff." Compl. ¶ 19. But it is not enough for Plaintiff to allege that third parties *could* have received the allegedly defamatory statements; rather, Plaintiff must allege facts from which the Court could reasonably infer that a third party actually did receive them. *García-García*, 878 F.3d at 427; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On the allegations in the Complaint, the Court cannot reasonably infer that any challenged statement ever reached a third party.

## CONCLUSION

For all these reasons, the X Entities respectfully request dismissal of Plaintiff's Complaint, or alternatively, an order transferring this matter to the U.S. District Court for the Northern District of Texas under the Relevant Terms' forum selection clauses.

25

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 5th day of August 2026.

**IT IS HEREBY CERTIFIED** that on this same date, the undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record. A copy of this filing was also sent to Plaintiff to the email address provided to the Court, sergii@grybniak.com.

<table>
<tr>
<td>

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico 00918
Telephone No. (787) 274-1212
Facsimile No. (787) 274-1470

/s/ Oreste R. Ramos
Oreste R. Ramos
USDC-PR No. 216801
oramos@pmalaw.com

/s/ María Elena Martínez
María Elena Martínez
USDC-PR No. 305309
mmartinez@pmalaw.com

/s/ Marielena Melero Pardo
Marielena Melero Pardo
USDC-PR No. 310113
mmelero@pmalaw.com

</td>
<td>

Bradley P. Humphreys
(*pro hac vice* forthcoming)
KING STREET LEGAL, PLLC
800 Connecticut Avenue, NW, Suite 300
Washington, DC 20006
Telephone: 202-738-4580
Facsimile: 318-478-9819
Brad@kingstlegal.com

</td>
</tr>
</table>

26