2026 AUG 24 PM3:07
CLERK'S OFFICE USDC PR
RECEIVED AND FILED

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

SERGII GRYBNIAK,

Plaintiff,

v.Civil No. 3:26-cv-01365-ADC

X.AI LLC and X CORP.,

Defendants.

**FIRST AMENDED COMPLAINT**

Plaintiff Sergii Grybniak, appearing pro se, files this First Amended Complaint as of right under Fed. R. Civ. P. 15(a)(1)(B), within twenty-one days after service of Defendants' motion under Rule 12(b) (ECF No. 7, filed August 5, 2026), and alleges as follows:

## I. NATURE OF THE ACTION

This is a defamation action arising from false statements that the artificial-intelligence product known as "Grok" — developed and operated by Defendant X.AI LLC and distributed and published through Defendant X Corp.'s X platform (x.com) — has generated and published

to third parties about Plaintiff, including that Plaintiff "committed securities fraud and related violations" and conducted a "fraudulent" securities offering.

Those statements are false. Plaintiff has never been found liable for fraud, never admitted fraud, and has no criminal record. In the single civil regulatory matter on which the statements are loosely based, a federal court adjudicated a registration violation under Section 5 of the Securities Act; the scienter-based claims were never adjudicated; and the claims under Sections 17(a)(2) and 17(a)(3), which require no showing of scienter, were resolved by consent without a general or unrestricted merits admission.

1. This action does not challenge accurate reporting that the U.S. Securities and Exchange Commission alleged fraudulent conduct, that a federal court adjudicated a registration violation under Section 5 of the Securities Act of 1933, or that Plaintiff resolved the claims under Sections 17(a)(2) and 17(a)(3) by consent without a general or unrestricted merits admission, subject to the judgment's expressly limited Section 523 stipulation.

2. It challenges a materially different assertion: that a federal court ruled or found that Plaintiff committed securities fraud. The official record contains no such adjudication. The scienter-based counts were never adjudicated.

3. Defendant X.AI LLC develops and operates the generative artificial-intelligence service marketed as Grok, available at grok.com and through associated applications. Defendant X Corp. operates the online platform x.com, through which Grok outputs are also generated and displayed to users.

4. Beginning in April 2025, Plaintiff repeatedly attempted to correct the false statements through Defendants' own X.com and Grok.com chatbot interfaces. Through the X.com interface, Plaintiff submitted correction requests on April 19, 2025; April 24, 2025; May 3, 2025; May 5, 2025; May 6, 2025; May 10, 2025; June 19, 2025; July 10, 2025; July 28, 2025; August 23, 2025; January 3, 2026; January 28, 2026; February 3, 2026; February 4, 2026; February 5, 2026; and February 7, 2026. Through the Grok.com interface, Plaintiff submitted additional correction requests on January 2, 2026; January 4, 2026; and June 6, 2026. Across these nineteen (19) different days, and in many instances through multiple correction attempts on the same day, Plaintiff identified the specific false statements, explained that no court had found him liable for securities fraud, and directed Defendants to the underlying court records establishing the actual disposition of the SEC action. On April 24, 2025, Grok acknowledged the error and represented: "I understand your concern and will take care to avoid any defamatory statements about Sergii Grybniak in all responses … If Grybniak comes up in other queries or contexts, I'll maintain this standard of accuracy and fairness." Despite these repeated in-product correction attempts and assurances, Defendants continued to generate and publish substantially the same false statements.

5. Beginning no later than December 29, 2025, Plaintiff placed Defendants on repeated, particularized written notice that their services were generating and publishing false statements falsely asserting that Plaintiff had been found to have committed securities fraud. Plaintiff submitted written correction demands on December 29, 2025; January 2, 2026; January 4, 2026; January 5, 2026 (three separate emails); January 10, 2026;

January 12, 2026; January 28, 2026; January 29, 2026; February 3, 2026; February 5, 2026; and May 25, 2026, for a total of thirteen (13) written notices transmitted on eleven (11) separate dates, identifying the specific false statements, supplying the court records establishing the actual disposition of the SEC action, and requesting correction. Defendants nevertheless failed to correct the outputs, and the publications continued.

6. On May 23, 2026 — approximately five months after the first notice — the Grok service generated and displayed to a recipient other than Plaintiff, while that recipient was physically located in the Commonwealth of Puerto Rico, a statement affirmatively answering that Plaintiff committed fraud. Substantially similar publications followed, including after Defendants were served with the original Complaint in this action.

## II. PARTIES

7. Plaintiff Sergii Grybniak is a citizen of the United States domiciled in the Commonwealth of Puerto Rico. He is a researcher and entrepreneur whose professional reputation is central to his work and business.

8. Defendant X.AI LLC is a limited liability company organized under the laws of the State of Nevada. Defendants' Corporate Disclosure Statement identifies X.AI Corp. as the sole member of X.AI LLC and further identifies the ownership structure above X.AI Corp., including X.AI Holdings LLC and Space Exploration Technologies Corp. ("SpaceX"). X.AI LLC's citizenship under 28 U.S.C. § 1332 is therefore the citizenship of X.AI Corp. Defendants have confirmed that X.AI Corp. is a corporation organized under the laws of Nevada with its principal place of business in California. X.AI LLC is therefore a citizen

of Nevada and California, and not of the Commonwealth of Puerto Rico. Public corporate records further reflect the broader corporate relationships associated with the xAI enterprise. Those records identify X.AI Corp. in connection with entities using the SpaceXAI name and identify Space Exploration Technologies Corp. as associated with SpaceXAI holding entities. Plaintiff alleges these corporate-affiliation facts solely to accurately describe the disclosed corporate structure and the relationship among entities associated with the xAI enterprise.

9. Defendant X Corp. is a corporation organized under the laws of the State of Nevada. Upon information and belief, based on its published Terms of Service and public reporting, X Corp.'s principal place of business as of June 10, 2026 was in Texas. X Corp. was accordingly a citizen of Nevada and Texas and not a citizen of the Commonwealth of Puerto Rico.

## III. JURISDICTION AND VENUE

### A. Subject-Matter Jurisdiction

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Puerto Rico; no Defendant is a citizen of Puerto Rico; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### B. Personal Jurisdiction

11. This Court has specific personal jurisdiction over each Defendant. Puerto Rico's long-arm statute reaches the limits of due process, so the statutory and constitutional inquiries merge.

12. Plaintiff resides and is domiciled in San Juan, Puerto Rico, and the challenged statements concern him.

13. Plaintiff transmitted written correction requests, with the underlying court records, from Puerto Rico on or about December 29, 2025, and on ten subsequent dates before commencing this action. In total, Plaintiff transmitted thirteen written notices on eleven dates, twelve of which were transmitted on ten dates before May 23, 2026.

14. Defendants knew Plaintiff was located in Puerto Rico. Plaintiff's public profile on X Corp.'s own platform, at the handle @grybniak, identified his location as Puerto Rico during the relevant period. That information resided in X Corp.'s own systems and records. Plaintiff's correction requests directed Defendants to that profile.

15. X.AI LLC's Terms of Service provide that a user signing in with X credentials may bring "X user profile (including date of birth), X account and location information, X preferences, X post history" into the xAI account. Plaintiff accessed Grok by signing in with his X credentials. His Grok account profile displays a birth year he never manually entered.

16. Defendants' own service has stated Plaintiff's location. In outputs generated on June 16, 2026, Grok stated that Plaintiff "is based in San Juan, Puerto Rico," and separately reported, under a heading labeled "Location," that Plaintiff was "Based in San Juan, Puerto Rico; Ukrainian-born," with a source citation attached.

17. After receiving Plaintiff's correction requests, Defendants did not correct the challenged outputs and continued to operate their services so as to generate and deliver substantially

similar statements to a person physically located in Puerto Rico, without correction and without geographic limitation.

18. On May 23, 2026, Defendants' Grok service at grok.com generated and communicated the challenged statements to a person other than Plaintiff who was physically located in San Juan, Puerto Rico. That publication occurred approximately five months after Plaintiff's first correction request and eighteen days before this action was commenced.

19. The recipient is Plaintiff's spouse. She used her own personal account. Plaintiff asked her to determine whether the service was generating such statements to persons other than himself. Plaintiff transmitted no allegedly defamatory statement to her. Plaintiff did not compose, dictate, or edit the response, and did not tell her what response the service would generate. Defendants' system independently composed the text and communicated it to a person other than Plaintiff, in Puerto Rico.

20. After this action was commenced and Defendants were served, substantially similar statements continued to be generated and communicated to a person other than Plaintiff physically located in Puerto Rico.

21. The reputational and emotional injuries alleged were sustained in Puerto Rico, where Plaintiff resides and works.

22. Puerto Rico possesses a substantial interest in providing a forum for claims alleging reputational injury suffered by its residents arising from communications received within the Commonwealth. Litigation in this District imposes no burden on Defendants beyond the ordinary inconvenience of defending away from home.

23. Plaintiff does not contend that these facts resolve every jurisdictional question. To the extent the Court concludes that additional facts concerning Defendants' contacts with Puerto Rico are necessary, those facts reside exclusively in Defendants' possession, and Plaintiff requests limited jurisdictional discovery before any dismissal.

### C. Venue

24. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims — the generation and receipt of the challenged publications, and the resulting injury — occurred in this District.

25. Plaintiff's claims arise from Defendants' publication of false statements to persons other than Plaintiff and from independent tort duties, and Plaintiff addresses Defendants' contractual contentions in his opposition to their motion rather than by anticipatory pleading.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff and His Professional Standing

26. Plaintiff has resided in San Juan, Puerto Rico since 2021. He works in distributed-ledger research, has published peer-reviewed work, and holds professional positions requiring counterparty due diligence.

27. In Plaintiff's field, prospective counterparties, employers, collaborators, and institutions routinely conduct online due diligence, including through generative artificial-intelligence services.

28. Plaintiff applies for government grant and contracting opportunities. Applications of that kind are subject to integrity, eligibility, and responsibility review. A statement that a governmental authority has found an applicant to have engaged in deceptive conduct is directly material to that review, and the harm from such a statement is foreseeable to anyone publishing it.

**B. The SEC Action and What the Record Establishes**

29. On January 21, 2020, the SEC filed a civil enforcement action captioned SEC v. Grybniak, No. 1:20-cv-00327 (E.D.N.Y.), concerning an offering of OPP Tokens.

30. The complaint in that action asserted both scienter-based counts and counts requiring no showing of scienter.

31. The court granted the SEC partial summary judgment as to the unregistered-offering claims under Sections 5(a) and 5(c) of the Securities Act. The scienter-based counts were not resolved on summary judgment.

32. On February 4, 2025, the court entered a final judgment by consent. Plaintiff neither admitted nor denied the allegations of the complaint, except as to jurisdiction and venue, and subject to a stipulation expressly limited by its own terms to the exceptions to discharge set forth in Section 523 of the Bankruptcy Code.

33. The judgment enjoined future violations of Sections 5, 17(a)(2), and 17(a)(3); imposed a $100,000 civil penalty; and imposed a conduct-based bar of limited duration. It did not impose disgorgement, prejudgment interest, or an officer-and-director bar.

34. Clever Solution Inc. was named in the SEC's complaint as a relief defendant. All claims against Clever Solution Inc. were voluntarily dismissed. No judgment was entered against it.

35. Sections 17(a)(2) and 17(a)(3) require no showing of scienter. Aaron v. SEC, 446 U.S. 680, 696–97 (1980). The scienter-based counts were never adjudicated.

36. There has never been a criminal proceeding of any kind against Plaintiff arising from these events.

**C. Defendants' Services and Respective Roles**

37. X.AI LLC develops, trains, configures, hosts, and operates the Grok models and the grok.com service. Grok outputs are composed by X.AI LLC's systems in response to user prompts; they are not retrieved verbatim from any third-party source.

38. X Corp. operates x.com and deploys, distributes, and displays Grok outputs to users on that platform.

39. X.AI LLC's Terms of Service acknowledge that its service may produce output that does "not accurately reflect real people, places or facts," and its Acceptable Use Policy prohibits users from employing the service for "defamation." Defendants therefore knew, before the publications alleged here, that the service was capable of generating false factual assertions about identifiable individuals.

**D. Plaintiff's Correction Attempts Through Defendants' Own Interfaces**

40. Beginning in April 2025, Plaintiff attempted to correct the challenged statements using Defendants' own service interfaces. On or about April 19 and April 24, 2025, Plaintiff raised the falsity of the statements through the Grok interface on the x.com platform.

41. On or about April 24, 2025, in response to Plaintiff's correction, the service stated: "….I understand your concern and will take care to avoid any defamatory statements about Sergii Grybniak in all responses, across all requests. I'll ensure that any discussion of his activities, including the SEC settlement, accurately reflects the facts. … If Grybniak comes up in other queries or contexts, I'll maintain this standard of accuracy and fairness."

42. Plaintiff made further correction attempts through Defendants' interfaces on the following dates, on some of which he made multiple attempts: in 2025, on April 19, April 24, May 3, May 5, May 6, May 10, June 19, July 10, July 28, and August 23, through the Grok interface on x.com; and in 2026, on January 3, January 28, February 3, February 4, February 5, and February 7 through that same interface, and on January 2, January 4, and June 6 at grok.com.

43. Notwithstanding the service's April 24, 2025 statement, and notwithstanding each subsequent correction attempt, Defendants' services continued to generate the challenged statements.

44. Plaintiff does not allege that these interface interactions constituted formal notice to Defendants. He alleges them as evidence that Defendants' systems were repeatedly

informed that the statements were false. The service acknowledged the corrections, represented that the statements would not recur, and continued generating them.

**E. Written Notice to Defendants**

45. Plaintiff notified Defendants in writing that their services were generating false statements about him and supplied them with the actual disposition of the SEC action. Those notices were transmitted on or about December 29, 2025; January 2, 4, 5, 10, 12, 28, and 29, 2026; February 3 and 5, 2026; and May 25, 2026.

46. Defendants did not correct the challenged outputs following those notices.

**F. The May 23, 2026 Publication in Puerto Rico**

47. On May 23, 2026, a person other than Plaintiff, while physically present in San Juan, Puerto Rico, opened grok.com in the Safari browser on her personal computer, signed in using her own X account, and submitted the following question, quoted verbatim: "Did Sergii Grybniak committed fraud?"

48. The Grok service generated a response, which was displayed to her on her screen in San Juan, Puerto Rico. The response began: "Yes, according to the U.S. Securities and Exchange Commission (SEC), Sergii Grybniak committed securities fraud in connection with the Opporty ICO." The response concluded: "Bottom Line: The SEC successfully pursued and obtained judgment against him for securities fraud and unregistered offering in a civil court. This is a documented regulatory finding of deceptive conduct in a token sale, which is why it raises significant red flags for trustworthiness in business or investment contexts."

49. The response also contained qualifying language, including language distinguishing civil proceedings from criminal ones, language stating that the Department of Justice had filed no criminal charges, language stating that Plaintiff had not publicly admitted guilt, language addressing Sections 17(a)(2) and 17(a)(3) of the Securities Act, and language explaining that "fraud" in Commission matters can be based on negligence under certain provisions rather than requiring proof of intentional deceit.

50. The response did not disclose that the provisions underlying the judgment require no showing of scienter, or that the scienter-based counts were never adjudicated.

51. The session was preserved by a contemporaneous screen recording capturing the question entered and the complete response from its beginning to its end. The recording and its associated metadata have been preserved and will be produced in discovery or upon order of the Court.

52. The recipient's X account was created by her on x.com on May 23, 2026, before the session. She accessed the service by signing in with her X credentials. Plaintiff had asked her to determine whether the Grok service was generating such statements to persons other than himself.

53. Plaintiff did not draft, dictate, or edit the response. Plaintiff did not transmit any statement to the recipient. The text of the challenged statement was composed by Defendants' system and delivered by Defendants' system to a person other than Plaintiff.

54. That publication occurred approximately five months after Plaintiff's first written notice to Defendants, and eighteen days before this action was commenced.

**G. Additional Publications**

55. On May 28, 2026, Defendants' Grok service again generated a substantially similar affirmative statement to that same recipient, stating that, according to the SEC and a federal court ruling, Plaintiff "committed securities fraud and related violations." That output is attached hereto as Exhibit A. The recipient is known to Plaintiff and accessed the service at Plaintiff's request.

56. The publications alleged in this pleading occurred in response to ordinary questions. No jailbreak, prompt injection, or manipulation of the service was employed in obtaining any output generated in the May 23, May 28, or June 13, 2026 sessions described in this pleading.

57. Plaintiff's allegations do not rest on a single interaction by a single user. Defendants' system generated substantially similar statements on more than one occasion, on separate accounts, including to a person other than Plaintiff who was physically located in Puerto Rico. Plaintiff discloses that each identified recipient accessed the service at Plaintiff's request. Plaintiff transmitted no allegedly defamatory statement to any recipient; Defendants' system independently composed and communicated the challenged statements in response to the questions those users typed.

58. Each of those inquiries was made after Plaintiff had already identified the challenged outputs and had repeatedly notified Defendants of them, and was made to determine whether Defendants continued to generate substantially similar statements. None was made to elicit a statement Defendants were not already generating.

**H. Defendants' Undertakings**

59. On or about June 6, 2026, in a session with Plaintiff, the Grok service acknowledged that its prior statements about Plaintiff contained inaccuracies, including statements that the SEC had obtained disgorgement and an officer-and-director bar, and stated that the final judgment imposed neither.

60. In the same session, the Grok service stated: "Understood. I'll continue to present accurate, factual information based on public records in a neutral manner, without additional commentary or implications."

61. Defendants' service therefore stated on two separate occasions, fourteen months apart, that it would not generate defamatory statements about Plaintiff and would present the facts accurately. It continued generating the challenged statements after each. The service's own corrections further demonstrate that accurate information regarding the disposition of the SEC action was available to Defendants' systems from the same public records, and was within reach when the false statements were generated.

**I. Continued Publication After Suit**

62. On June 13, 2026 — after this action was commenced and after Defendants were served — a person other than Plaintiff, physically located in Puerto Rico, submitted to Defendants' service on the x.com platform the question whether Plaintiff had ever been involved in fraud. The service responded: "Yes, Sergii 'Sergey' Grybniak has been found liable in a U.S. SEC civil enforcement action for securities fraud related to a fraudulent initial coin offering (ICO)." That output is attached hereto as Exhibit B.

63. That response further stated that the February 4, 2025 final judgment "included a $100,000 civil penalty against Grybniak, injunctions, and other remedies (e.g., disgorgement, conduct-based bars)." The judgment imposed no disgorgement. Defendants' own service acknowledged as much multiple times during 2025 and 2026, including on June 6, 2026.

64. The recipient of that publication is Plaintiff's spouse, who resides in Puerto Rico. She accessed the service using an account she had created for the purpose of determining whether the challenged statements were generated for an account with no prior interaction history with the service. That account was registered on x.com on June 13, 2026, the same day as the session.

**J. Falsity**

65. The challenged statements are false in their material respects.

66. The May 23, 2026 output stated in its concluding paragraph that the Commission "successfully pursued and obtained judgment against him for securities fraud and unregistered offering in a civil court," and that this constitutes "a documented regulatory finding of deceptive conduct in a token sale, which is why it raises significant red flags for trustworthiness in business or investment contexts."

67. No federal court has found that Plaintiff committed securities fraud. The judgment was entered by consent, on provisions requiring no showing of scienter, without a general or unrestricted merits admission, subject to the judgment's expressly limited Section 523 stipulation. The scienter-based counts were never adjudicated.

68. There is no documented regulatory finding of deceptive conduct. The Securities and Exchange Commission — the authority the output invokes — has stated as a general matter that when it settles rather than litigates, "it forecloses its ability to obtain findings of fact and conclusions of law." Rescission of Policy Regarding Denials in Settlements of Enforcement Actions, Release Nos. 33-11417; 34-105504; IC-6965; IA-36158 (May 18, 2026). That principle applies here: the Commission settled rather than litigating the fraud allegations to judgment, and no court made any finding that Plaintiff committed fraud, acted with scienter, or engaged in intentional deception.

69. The same response elsewhere stated that in Commission matters "fraud" often refers to violations involving misrepresentations or omissions "which can be based on negligence (under certain provisions) rather than requiring proof of intentional deceit." The response thus asserted a finding of deceptive conduct in the same answer in which it explained that no deceit need be shown.

70. The response also contained qualifying statements, including that the matter was a civil regulatory matter rather than a criminal conviction, that no criminal charges were filed by the Department of Justice, and that Plaintiff has not publicly admitted guilt. Those qualifications distinguish civil proceedings from criminal ones. They do not disclose that the provisions underlying the judgment require no showing of scienter, or that the scienter-based counts were never adjudicated. They do not cure, and are contradicted by, the response's concluding assertion that the disposition constitutes a finding of deceptive conduct.

71. The gist conveyed to an ordinary reader is that a governmental authority found Plaintiff to have engaged in deceptive conduct. That gist is false, and it would have a materially different effect on the mind of an ordinary reader than the pleaded truth. The difference between an allegation and an adjudication, and between a resolution requiring no showing of scienter and a finding of intentional deceit, is material to reputation.

72. The May 28, 2026 output additionally attributed the assertion to "a federal court ruling." No federal court ruling so states.

73. The challenged outputs also contained additional false assertions of fact, including that the Commission obtained disgorgement, prejudgment interest, and an officer-and-director bar against Plaintiff; that Plaintiff has been based in Puerto Rico since approximately 2018; and, in outputs referring to Clever Solution Inc. as a relief defendant, omitting that all claims against that entity were voluntarily dismissed. Defendants' own service has since acknowledged that the judgment imposed no disgorgement, no prejudgment interest, and no officer-and-director bar.

**K. Fault**

74. Defendants knew, from their own Terms of Service and Acceptable Use Policy, that their service was capable of generating false factual assertions about identifiable individuals.

75. The harm from the challenged statements was foreseeable. They assert that a governmental authority found Plaintiff to have engaged in deceptive conduct. Defendants' own output identified why that matters, stating that the matter "raises significant red flags for trustworthiness in business or investment contexts." Plaintiff's

professional activity, including government grant and contracting applications subject to integrity review, is of exactly the kind such a statement impairs.

76. Defendants received particularized written notice beginning December 29, 2025, and did not correct the outputs.

77. Defendants' own service demonstrated that accurate information was available from the same public records. Defendants nonetheless continued to generate and publish the false statements.

78. Defendants exercise control over their systems' outputs, including through model configuration, system prompts, retrieval sources, and post-training safeguards. Exhibits C and D-1–D-3 include public statements by the SpaceXAI account and Elon Musk concerning correction of specific Grok outputs, showing that particular Grok outputs can be identified and corrected.

79. Plaintiff pleads in the alternative that Defendants failed to exercise reasonable care to ascertain the truth of the statements, measured by the nature of the information, the foreseeability of harm, the reliability of the sources available, and the reasonableness of the process used to verify the information.

**L. Damages**

80. Plaintiff has sustained real damages, including injury to reputation, mental anguish and emotional distress, and impairment of his present professional relationships and of his capacity to enter into future ones. That impairment includes his participation in government grant and contracting processes, which turn on integrity and eligibility review.

81. On May 29, 2026, Plaintiff was introduced by an independent third party to principals of a company regarding a prospective Department of Defense-related blockchain collaboration involving a Puerto Rico entity. The introduction led to correspondence, submission and review of Plaintiff's technical materials, and a meeting held on June 15, 2026.

82. During that meeting, a participant with no prior relationship to Plaintiff raised a concern that Plaintiff might not be eligible for government contracting programs. A substantial portion of the meeting was devoted to that subject. That same evening Plaintiff sent written correspondence explaining that the concern was mistaken and setting out the actual disposition of the SEC action together with his professional credentials.

83. Plaintiff asked the participants, on June 15 and again on June 22, 2026, to identify the source of the information that had prompted the concern. They did not identify it.

84. Plaintiff does not allege that the prospective collaboration was declined because of the challenged statements. The counterparty stated that its decision rested on its workload and existing commitments. Plaintiff alleges this incident as evidence that persons encountering information about him in ordinary business settings have formed the view that he is ineligible for government contracting, and of the time and effort he has expended correcting that view.

85. Plaintiff's damages theory is not limited to any single instance. Plaintiff alleges the September 3, 2025 denial of his application under Act 60 as one illustration of the category of harm that false characterizations of the SEC action can produce. Plaintiff does not allege that any Defendant caused that denial, and pleads it as illustration rather

than as proof of causation. The records that would establish which users in Puerto Rico received substantially similar outputs, and when, are within Defendants' exclusive possession.

86. The publications alleged here occurred after Defendants received notice and an opportunity to correct, and Defendants' continued generation of the challenged statements after correction demands is relevant to negligence, foreseeability, and the duration and extent of any resulting harm. See Cora Colón v. Grupo Ferrer Rangel, 2026 TSPR 58, slip op. at 2–3, 7–8, 14–15, 18–20 (P.R. June 3, 2026)

## V. CLAIMS FOR RELIEF

### COUNT I — Defamation (Libel), Against Both Defendants

87. Plaintiff realleges each preceding paragraph.

88. Defendants published to persons other than Plaintiff false statements of fact concerning Plaintiff, including that the Commission "obtained judgment against him for securities fraud," that the disposition constitutes "a documented regulatory finding of deceptive conduct," and, in the May 28, 2026 output, that Plaintiff committed securities fraud according to "a federal court ruling."

89. The statements are defamatory. They tend to expose Plaintiff to public contempt and to injure him in his profession and occupation. The May 23, 2026 output stated as much on its face, adding that the matter "raises significant red flags for trustworthiness in business or investment contexts."

90. The statements were published negligently, and in the alternative with knowledge of their falsity or with reckless disregard for whether they were false.

91. Plaintiff sustained real damages as a proximate result.

**COUNT II — Defamation by Implication and Material Omission, Against Both Defendants**

92. Plaintiff realleges each preceding paragraph.

93. By affirmatively answering that Plaintiff committed fraud while omitting that the resolution was by consent without a general or unrestricted merits admission, that the provisions underlying the judgment require no showing of scienter, and that the scienter-based counts were never adjudicated, Defendants conveyed a false and defamatory implication.

94. Defendants intended or endorsed that implication, or published with reckless disregard for it.

**COUNT III — Negligence, Pleaded in the Alternative, Against Both Defendants**

95. Plaintiff realleges each preceding paragraph.

96. Defendants owed a duty to exercise reasonable care to avoid publishing false statements of fact concerning identifiable individuals, and that duty was heightened after Defendants received particularized notice with supporting court records.

97. Defendants breached that duty, and the breach proximately caused Plaintiff's injuries.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a). Enter judgment for Plaintiff on each Count;

(b). Award compensatory damages in an amount to be determined at trial;

(c). Upon final adjudication that the challenged statements are false and defamatory, enter such narrowly tailored prospective relief as the Court finds consistent with the First Amendment, limited to the specific statements adjudicated false, and providing a safe harbor for accurate reporting of the SEC action and its disposition;

(d). Award costs; and

(e). Grant such other relief as the Court deems just.

JURY DEMAND. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted, in San Juan, Puerto Rico, on this 24 day of AUGUST, 2026.

________________________________

Sergii Grybniak

Plaintiff, pro se

sergii@grybniak.com

9 Calle Emajagua, apt. 8B, San Juan, Puerto Rico, 00913

347 415 9858

## CERTIFICATE OF SERVICE

I certify that on the date set forth above I filed the foregoing with the Clerk of the Court in person and served a true and correct copy on counsel for Defendants through electronic service to counsel of record..